# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **TAMMY S. OLLIE**; and **RYAN E. OLLIE**,<br><br>Plaintiffs,<br><br>v.<br><br>**NEBRASKA METHODIST HEALTH SYSTEM, INC.**, d/b/a Methodist Health System; and **THE NEBRASKA METHODIST HOSPITAL**; **PHYSICIANS CLINIC, INC.**, d/b/a Methodist Physicians Clinic; and **BRENT J. TIERNEY, M.D., NICOLE SIMONS, R.N., AUREUS NURSING, LLC, LEAH FRAUENDORFER, R.N. and MEDICAL SOLUTIONS, LLC**<br>Defendants. | Case Number: 8:20-cv-330<br><br>**THIRD AMENDED COMPLAINT**<br>(Medical Malpractice/Professional Negligence and Loss of Consortium) |

### ALLEGATIONS COMMON TO ALL COUNTS

Plaintiff Tammy S. Ollie ("Ms. Ollie"), and Plaintiff Ryan E. Ollie, ("Mr. Ollie" and together with Ms. Ollie, are each individually referred to herein as, a "Plaintiff" and collectively as, the "Plaintiffs"), for their common allegations of fact against the above-named Defendants, state as follows:

#### PRELIMINARY STATEMENT

1. This is a civil action in which Plaintiffs seek to recover damages for separate and distinct injuries to each of them including, but not limited to, personal injuries, loss of consortium, loss of services and medical expenses, all of which are as a result of events which occurred prior to, during and after surgical procedures on February 28, 2020, as a result of the professional negligence/ medical malpractice of: (a) Defendant Nebraska Methodist Health System, Inc., a Nebraska non-profit corporation ("NMHS"); (b) Defendant The Nebraska Methodist Hospital, a

Nebraska non-profit corporation ("TNMH"); (c) Defendant Physicians Clinic, Inc., a Nebraska non-profit corporation ("PCI"); (d) Defendant Brent J. Tierney, M.D. ("Dr. Tierney"), (e) Defendant Nicole Simons, R.N. ("Nurse Simons"), and (f) Defendant Aureus Nursing, LLC, ("Aureus" and together with NMHS, TNMH, PCI, Dr. Tierney, and Nurse Simons are each individually referred to herein as, a "Defendant" and collectively as, the "Defendants").

**PARTIES**

2. At all times relevant herein, Ms. Ollie resided with Mr. Ollie in the City of Underwood, Pottawattamie County, Iowa.

3. At all times relevant herein, Mr. Ollie resided with Ms. Ollie in the City of Underwood, Pottawattamie County, Iowa.

4. At all times relevant herein, Ms. Ollie and Mr. Ollie were married to each other.

5. At all times relevant herein, NMHS was a Nebraska non-profit corporation, that acted, in whole or in part, as a holding company for affiliate corporations including, but not limited to, the following: (a) TNMH; (b) Methodist Women's Hospital; (c) Methodist Jennie Edmundson Hospital; (d) Methodist Physicians Clinic; (e) Nebraska Methodist Hospital Foundation; (f) Nebraska Methodist College-The Josie Harper Campus; and (g) Shared Service Systems, Inc., a Nebraska corporation. NMHS provided health care services to its affiliates in various areas including, but not limited to, the areas of accounting, finance, billing, collections, management engineering, planning, marketing, human resources, information technology and network development. NMHS provided such health care and health care-related services to members of the general public including, but not limited to, Ms. Ollie.

6. At all times relevant herein, NMHS promulgated and implemented policies and procedures at its affiliate organizations and it employed physicians, nurses, surgical technicians, other health care professionals, agents, ostensible or apparent agents, servants, and/or employees (collectively, the "NMHS Staff") to provide health care goods and services on an inpatient and/or outpatient basis to members of the general public including, but not limited to, Ms. Ollie.

7. As a matter of law, the negligent acts and/or omissions of the NMHS Staff are imputed to NMHS and, therefore, NMHS is vicariously liable for all such negligent acts and/or omissions by the NMHS Staff.

8. At all times relevant herein, TNMH was a Nebraska non-profit corporation, operating its business under various trade names. TNMH engaged in the business of providing health care and health care-related services.

9. At all times relevant herein, TNMH, in whole or in part, engaged in the business of providing comprehensive health care goods and services, as well as owning and operating health care facilities including, but not limited to, that certain hospital more commonly known as "Nebraska Methodist Hospital" located at 8303 Dodge Street, Omaha, Nebraska 68114 (the "Hospital"). TNMH provided health care goods and services on an inpatient and/or outpatient basis to members of the general public including, but not limited to, Ms. Ollie.

10. At all times relevant herein, TNMH employed physicians, nurses, surgical technicians, other health care professionals, agents, ostensible or apparent agents, servants, and/or employees (collectively, the "Hospital Staff") at the Hospital to provide health care goods and services on an inpatient and/or outpatient basis to members of the general public including, but not limited to, Ms. Ollie.

11. As a matter of law, the negligent acts and/or omissions of the Hospital Staff are imputed to TNMH and, therefore, TNMH is vicariously liable for all such negligent acts and/or omissions by the Hospital Staff.

12. At all times relevant herein, PCI was a Nebraska non-profit corporation, that was, in whole or in part, engaged in the business of employing physicians and owning and operating health care clinics and facilities.

13. At all times relevant herein, PCI employed physicians, nurses, technicians, agents and/or other health care professionals (collectively, the "PCI Staff") to provide health care goods and services on an inpatient and/or outpatient basis to members of the general public including, but not limited to, Ms. Ollie.

14. As a matter of law, the negligent acts and/or omissions of the PCI Staff are imputed to PCI and, therefore, PCI is vicariously liable for all such negligent acts and/or omissions by the PCI Staff.

15. At all times relevant herein, Dr. Tierney was a medical doctor specializing in gynecological surgery and practicing his profession in Omaha, Douglas County, Nebraska, and he held himself out to be a skilled and competent physician practicing gynecological surgery.

16. At all times relevant herein, Dr. Tierney was an employee, agent, servant, director and/or ostensible or apparent agent of NMHS, TNMH and/or PCI, acting in the course and scope of his employment or other business relationship with one or more of the Defendants.

17. As a matter of law, the negligent acts and/or omissions of Dr. Tierney are imputed to NMHS, TNMH and/or PCI, and, therefore, NMHS, TNMH and/or PCI are vicariously liable for all such negligent acts and/or omissions.

18. At all times relevant herein, Aureus Nursing, LLC ("Aureus"), was a Nebraska limited liability company, engaged, in whole or in part in providing health care goods and services, including nurse services, to the general public, including but not limited to Ms. Ollie.

19. At all times relevant herein, Nicole Simons, R.N. ("Nurse Simons"), was an agent, servant, employee or ostensible or apparent agent of Aureus, acting in the course and scope of her employment or other business relationship with Aureus. As a matter of law, the negligent acts and/or omissions of Nurse Cooper are imputed to Aureus, and Aureus is therefore vicariously liable for all such negligent acts and/or omissions.

20. At all times relevant herein, Medical Solutions, LLC ("Medical Solutions"), was a Delaware limited liability company, engaged, in whole or in part in providing health care goods and services, including nurse services, to the general public, including but not limited to Ms. Ollie.

21. At all times relevant herein, Leah Frauendorfer, R.N. ("Nurse Frauendorfer"), was an agent, servant, employee or ostensible or apparent agent of Medical Solutions, acting in the course and scope of her employment or other business relationship with Medical Solutions As a matter of law, the negligent acts and/or omissions of Nurse Frauendorfer are imputed to Medical Solutions, and Medical Solutions is therefore vicariously liable for all such negligent acts and/or omissions.

22. Plaintiffs reserve the right to add other parties, causes of action, and additional claims for damages under the circumstances of this case.

## JURISDICTION

23. This Court has jurisdiction under 28. U.S.C. § 1332.

24. Each of the Plaintiffs is a citizen and resident of the State of Iowa.

25. As of the date hereof and upon information and belief, NMHS, TNMH and PCI are all citizens and residents of the State of Nebraska.

26. As of the date hereof and upon information and belief, Dr. Tierney is a citizen and resident of a state other than the State of Iowa.

27. Pursuant to Neb. Rev. St. § 25-536(1)(c), this Court has personal jurisdiction over each of the Defendants, because agents, servants and/or employees of each of the Defendants committed one or more tortious acts in Douglas County, Nebraska, as more fully set forth below.

28. The amount in controversy exceeds $75,000, exclusive of interest and costs.

### VENUE

29. Venue lies in this Court as the negligent acts and/or omissions complained of herein occurred in Douglas County, Nebraska.

### NEBRASKA HOSPITAL-MEDICAL LIABILITY ACT

30. Each of the Defendants does not qualify for coverage under the Nebraska Hospital-Medical Liability Act, Neb. Rev. St. §§ 44-2801 to 44-2855, as amended from time to time (the "Act") and each has failed to comply with the requirements of the Act. Plaintiffs demand strict proof that at all times relevant herein, any of the Defendants making such a claim, was covered by and in compliance with the Act.

31. Notwithstanding any filing by the Defendants for the special benefits, privileges and protection of the Act, Plaintiffs allege that the Act is unconstitutional in whole or in part because it violates the Seventh (7th) and Fourteenth (14th) Amendments to the Constitution of the United States, as well as the following provisions of the Constitution of the State of Nebraska: Article 1, §§ 1, 3, 6, 13, 16, 21, 25, 26; Article II, § 1; Article III, §18; Article V, § 2; Article VI, § 1 and Article XII, § 10(c).

32. Plaintiffs hereby affirmatively waive their right for a medical review panel to review their claims herein against the Defendants as provided by the Act and elects to file this action directly in the United States District Court for the District of Nebraska.

33. A copy of this Complaint is hereby served upon the Director of the Nebraska Department of Insurance, together with a copy upon the Attorney General of the State of Nebraska.

### STATEMENT OF FACTS

34. This action arises out of medical and health care services provided or not provided by the Defendants to Ms. Ollie commencing on or about February 28, 2020.

35. On or about February 28, 2020, Ms. Ollie underwent a surgical procedure at the Hospital.

36. The surgery was performed by Dr. Tierney.

37. Dr. Tierney was assisted by members of the NMHS Staff before, during and after the surgical procedure.

38. Dr. Tierney was assisted by members of the Hospital Staff before, during and after the surgical procedure.

39. Dr. Tierney was assisted by members of the PCI Staff before, during and after the surgical procedure

40. Dr. Tierney was assisted by Nurse Simons, before, during and after the surgical procedure.

41. Dr. Tierney was assisted by Nurse Frauendorfer, before, during and after the surgical procedure.

42. The process of counting items, such as sponges, needles or instruments that may be retained in a patient during a surgical procedure is known as a surgical count.

43. The retention of a surgical sponge in a patient during a surgical procedure is a recognized "never event."

44. The retention of a surgical sponge in a patient during a surgical procedure should never happen.

45. The retention of a surgical sponge in a patient during a surgical procedure cannot occur without medical negligence.

46. It was the duty of one or more members of the NMHS Staff to perform a surgical count before Dr. Tierney closed Ms. Ollie.

47. It was the duty of one or more members of the Hospital Staff to perform a surgical count before Dr. Tierney closed Ms. Ollie.

48. It was the duty of one or more members of the PCI Staff to perform a surgical count before Dr. Tierney closed Ms. Ollie.

49. It was the duty of Nurse Simons to perform a surgical count before Dr. Tierney closed Ms. Ollie.

50. It was the duty of Nurse Frauendorfer to perform a surgical count before Dr. Tierney closed Ms. Ollie.

51. It was the duty of one or more members of the NMHS Staff to perform a surgical count after Dr. Tierney closed Ms. Ollie.

52.     It was the duty of one or more members of the Hospital Staff to perform a surgical count after Dr. Tierney closed Ms. Ollie.

53.     It was the duty of one or more members of the PCI Staff to perform a surgical count after Dr. Tierney closed Ms. Ollie.

54.     It was the duty of Nurse Simons to perform a surgical count after Dr. Tierney closed Ms. Ollie.

55.     It was the duty of Nurse Frauendorfer to perform a surgical count after Dr. Tierney closed Ms. Ollie.

56.     One or more members of the NMHS Staff informed Dr. Tierney that "all sponge, needle and instrument counts were correct x2."

57.     One or more members of the Hospital Staff informed Dr. Tierney that "all sponge, needle and instrument counts were correct x2."

58.     One or more members of the PCI Staff informed Dr. Tierney that "all sponge, needle and instrument counts were correct x2."

59.     Nurse Simons informed Dr. Tierney that "all sponge, needle and instrument counts were correct x2."

60.     During the operative procedure performed by Dr. Tierney on February 28, 2020, a surgical dressing, measuring 30 x 30 x 0.5 cm with a 13.5 cm blue cloth band extending from it was left within the body of Ms. Ollie.

61.     Dr. Tierney, as the "captian of the ship," had a duty to ensure a surgical items were not unintentionally left within Ms. Ollie.

62.     The surgical count "x2" performed during the operative procedure performed by Dr. Tierney on February 28, 2020 was incorrect.

63.     On May 28, 2020, a CT scan of Ms. Ollie identified a suspected gossypiboma, a retained foreign object, in her left abdomen.

64.     On May 29, 2020, Ms. Ollie underwent a subsequent surgical procedure to remove the retained foreign object in her left upper quadrant.  The object, a 30x30x0.5cm surgical dressing with a 13.5 cm blue cloth band extending from it, was found to be "stuck" onto the transverse colon, the ligament of treitz, and a loop of the jejunum, showing a "definte inflammatory response." Dense adhesions were found throughout the upper abdomen, causing "severe adhesive disease", attaching the foreign object to the neighboring anatomical structures.

65. On May 29, 2020, the retained foreign object was identied as a retained sponge from the surgical procedure performed by Dr. Tierney on February 28, 2020.

66. The surgical count "x2" performed during the operative procedure of February 28, 2020 was negligently performed "x2."

67. Members of the NMHS Staff, the TNMH Staff, the PCI Staff, Nurse Simons and/or Nurse Frauendorfer negligently failed to properly perform a surgical count on February 28, 2020.

68. The Defendants, and each of them, negligently left surgical item in Ms. Ollie on February 28, 2020.

69. As a direct and proximate cause of the negligent actions and inactions of the Defendants, and each of them, Ms. Ollie suffered injuries and damages.

70. The aforementioned negligence of the Defendants, and each of them, was also a proximate cause of damages to Mr. Ollie.

71. As a direct and proximate result of the negligent conduct and omissions of the Defendants, and each of them, each of the Plaintiffs were traumatized and sustained severe and permanent injuries resulting in damages including, but not limited to, past and future medical expenses, past and future physical and mental pain, past and future inconvenience, past and future loss of society, past and future loss of companionship, past and future humiliation, diminished earning capacity, and substitute domestic services.

72. The standard of care applicable to each of the Defendants relating to the surgical count is a national one.

### COUNT I – NEGLIGENCE

For their Count I claim against NMHS, TNMH, PCI, Dr. Tierney, Aureus, Nurse Simons, Nurse Frauendorfer and Medical Solutions and each of them, Ms. Ollie incorporates by reference the Common Allegations of Fact in Paragraphs 1 through 61 above and alleges:

1. As a result of the health care provider-patient relationship between NMHS and Ms. Ollie, between TNMH and Ms. Ollie, between PCI and Ms. Ollie, between Dr. Tierney and Ms. Ollie, between Aureus and Ms. Ollie, between Nurse Simons and Ms. Ollie, between Medical Solutions and Ms. Ollie and beween Nurse Frauendorfer and Ms. Ollie, the NMHS Staff, the Hospital Staff, the PCI Staff, Dr. Tierney, Aureus, Nurse Simons, Medical Solutions and Nurse Nurse Frauendorfer owed Ms. Ollie a duty to possess and use the care, skill, and knowledge

ordinarily possessed and used under like circumstances by other health care providers and members of their respective professions engaged in a similar practice.

2. NMHS, the NMHS Staff, TNMH, the Hospital Staff, PCI and the PCI Staff, Aureus, Nurse Simons, Medical Solutions and Nurse Frauendorfer each breached their respective duties to Ms. Ollie to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers and members of their respective professions engaged in a similar practice because, in one or more of the following ways, each of them:

   a. Failed to adequately monitor and manage the surgical instruments and dressings during the surgical procedure performed by Dr. Tierney on February 28, 2020;

   b. Failed to properly perform a surgical count on at least two occasions during the surgical procedure performed by Dr. Tierney on February 28, 2020;

   c. Negligently provided reassurance to Dr. Tierney that all surgical materials had been removed from the body of Ms. Ollie prior to the closing of Ms. Ollie;

   d. Negligently provided reassurance to Dr. Tierney that all surgical materials had been removed from the body of Ms. Ollie after the closing of Ms. Ollie;

   e. Failed to comply with appropriate protocols, policies, procedures and guidelines for surgical counts;

   f. Failed to ensure that their employees received adequate and thorough training in performing surgical counts; and

   g. Were otherwise negligent in a manner not presently known to Plaintiffs.

3. As a result of the physician-patient relationship between Dr. Tierney and Ms. Ollie, Dr. Tierney owed a duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other physicians and members of his respective profession engaged in a similar practice.

4. Dr. Tierney breached his duties to Ms. Ollie to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other physicians and members of his respective profession engaged in a similar practice because, in one or more of the following ways, Dr. Tierney:

   a. Negligently allowed a surgical dressing to be retained within Ms. Ollie;

   b. Failed to adequately inspect the surgical field for retained items; and

   c. Was otherwise negligent in a manner not presently known to Plaintiffs.

5. As a result of the joint and several negligence of: (i) the NMHS Staff, for which NMHS is vicariously liable; (ii) the Hospital Staff, for which TNMH is vicariously liable; (iii) the PCI Staff, for which PCI is vicariously liable; (iv) Dr. Tierney, for which TNMH are vicariously liable, (v) Nurse Simons, for which Aureus is vicariously liable, (vi) Nurse Frauendorfer, for which Medical Solutions is vicariously liable Ms. Ollie suffered the following damages:

   a. A retained foreign object;
   b. Dense post-surgical adhesions;
   c. Past and future medical expenses for health care goods and services, the nature and extent of which are not presently known by Plaintiffs;
   d. Past and future physical pain and suffering;
   e. Past and future emotional distress and mental anguish;
   f. Past and future loss of enjoyment of life;
   g. Impaired earning capacity;
   h. Loss of the comfort, society and companionship of the family relationship; and
   i. Other damages, the nature and the extent of which are not presently known by Plaintiffs.

**WHEREFORE**, Ms. Ollie prays for judgment against NMHS, TNMH, PCI, Dr. Tierney, Aureus, Nurse Simons, Medical Solutions and Nurse Frauendorfer and each of them, for special and general damages in an amount to be determined by the jury that will be fair and adequate, but not excessive, plus interest, costs, attorneys fees and expenses, and for such further relief as the Court may deem just and proper under the circumstances.

### COUNT II – LOSS OF CONSORTIUM

For his Count II claim against NMHS, TNMH, PCI, Dr. Tierney, Aureus, and Nurse Simons, and each of them, Mr. Ollie incorporates by reference the Common Allegations of Fact in Paragraphs 1 through 67 above and alleges:

1. At all times relevant herein, Ms. Ollie and Mr. Ollie were husband and wife.
2. As a direct and proximate result of the above-described joint and several negligence of the Defendants, and each of them, and the resulting injuries sustained by Ms. Ollie, Mr. Ollie has been deprived of the services of his wife, and has suffered a loss of consortium.

3. Such services of Ms. Ollie, include but are not limited to, a past, present and future impairment or diminishment in the services, society, affection, care, comfort, companionship and conjugal rights of his wife.

**WHEREFORE**, Mr. Ollie, in his individual capacity, prays for judgment against all Defendants, and each of them, for special damages in an amount undetermined at this time, for all general damages allowable under the laws of the State of Nebraska, and for such other and further relief as the Court may deem just and equitable under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby request that trial by jury of the foregoing action should be held in the City of Omaha, Douglas County, Nebraska, and that the case be calendared accordingly.

**DATED**, this 9th day of December, 2021.

**TAMMY S. OLLIE,** and **RYAN E. OLLIE**, Plaintiffs

By: s/ *Patrick J. Cullan*
Patrick J. Cullan, #23576
Joseph P. Cullan, #22145
Cullan & Cullan L.L.C.
1113 Harney Street
Omaha, Nebraska 68102-1829
Telephone: (402) 397-7600
Facsimile: (402) 397-3816
Email: pat@cullanlaw.com
joe@cullanlaw.com
ATTORNEYS FOR PLAINTIFFS

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing First Amended Complaint was served on the parties herein by sending said document via United States Postal Service, first-class postage prepaid, addressed to the following on this 9th day of December, 2021.

**David L. Welch**
Pansing Hogan Ernst & Bachman, LLP
10250 Regency Parkway Drive

Omaha, Nebraska 68114
Telephone: (402) 397-5500
Email: dwelch@pheblaw.com
Attorney for Defendants

-and-

Joseph S. Daly
EVANS & DIXON, LLC
11422 Miracle Hills Drive, Suite 400
Omaha, NE 68154
jdaly@evans-dixon.com
Attorney for Defendants

-and-

**Douglas J. Peterson**
Attorney General of the State of Nebraska
2115 State Capitol
Lincoln, Nebraska 68509
Telephone: (402) 471-2683

-and-

**Eric Dunning**
Director, Nebraska Department of Insurance
1526 K Street, Suite 200
Lincoln, Nebraska 68508-2734

/s/ *Patrick J. Cullan*